# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JASON LATIMORE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-13481-FDS |
| JOHN HOULE, WILLIAM GROSSI, and VINCENT POON, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**SAYLOR, J.**

This action arises out of an alleged attack on a prisoner by a correctional officer at the Massachusetts Correctional Institution at Norfolk ("MCI-Norfolk"). In his second amended complaint, plaintiff Jason Latimore asserts claims for relief under 42 U.S.C. § 1983, the Massachusetts Declaration of Rights, Mass. Gen. Laws ch. 12 § 11I, Mass. Gen. Laws ch. 214 § 1B, and state tort law. The complaint alleges that on November 2, 2011, defendant Vincent Poon repeatedly slammed the door to Latimore's cell on his hands and arms, severely injuring him. It further alleges that defendant John Houle, who was the lieutenant on duty, failed to report the incident or reprimand Poon for his actions. Finally, it alleges that defendant William Grossi, the security director, failed to investigate Latimore's grievances or arrange for medical treatment.

Defendants have moved for partial summary judgment. For the following reasons, the motion will be granted in part and denied in part.

## I. Background

Unless otherwise noted, the following facts are undisputed.[1]

### A. Factual Background

#### 1. The November 2, 2011 Incident

Jason Latimore was incarcerated at the Massachusetts Correctional Institution-Norfolk ("MCI-Norfolk") at all times relevant to the complaint. (Def. SMF ¶ 1). He was serving two concurrent sentences of three years and a concurrent sentence of two-and-a-half years for various drug offenses. (*Id.*). He was at MCI-Norfolk from June 2010 to November 2012. (*Id.*).[2]

On November 2, 2011, Latimore was held in the Special Management Unit ("SMU") of MCI-Norfolk waiting to be transferred to the Department Disciplinary Unit ("DDU") at MCI-Cedar Junction. (Def. Ex. 1). He was being transferred for seriously injuring another inmate in a fight. (*Id.*).

After a morning recreation period, Latimore returned to his cell. (Def. Ex. 2). Correctional Officer Vincent Poon, who was the escorting officer, told Latimore that he removed one of the two radios in his cell. (*Id.*).[3] Latimore then became agitated, placing his hands in the

---

[1] Plaintiff was given until March 8, 2018, to file an opposition to defendants' motion for summary judgment. His statement of material facts and accompanying exhibits were received on March 15, 2018, and docketed on March 28, 2018. Nevertheless, the date on the documents indicates that he mailed them from the prison on February 28, 2018. Accordingly, the Court will accept those filings as timely for the purposes of this memorandum and order.

However, plaintiff's motion for summary judgment was dated March 14, 2018, and received by the Court on March 19, 2018. The Court had set a deadline of February 1, 2018, for the filing of dispositive motions. Plaintiff did not file his motion until at least six weeks after that deadline. Accordingly, the Court will not consider his motion.

[2] Plaintiff has since returned to DOC custody; he was sentenced in September 2015 to five concurrent 3.5-to-5.5 year sentences for new drug offenses. (Def. SMF ¶ 1).

[3] It appears that prisoners are permitted to only have one radio. Latimore had two radios because a former cellmate, Edward Green, was removed and left his own radio to Latimore. (Latimore Dep. at 18).

2

trap door of the cell, and began arguing with Poon. (*Id.*).

The parties dispute what happened next. Latimore contends that Poon "closed and slammed the trap door" repeatedly on his arm without warning for 30 to 40 seconds. (Pl. SMF ¶ 8; Latimore Dep. at 20-21). Two other correctional officers, Fernando Pontes and Terrel Panis, observed the incident. (Latimore Dep. at 29). Latimore testified that Pontes stopped Poon by pushing him against the wall. (*Id.* at 36). Pontes then called over Lieutenant John Houle, the supervising officer. (*Id.* at 37).

Defendants contend that "[a]fter repeated warnings, Latimore removed his hands and arms from the trap and his cell door was secured." (Def. SMF ¶ 10; Def. Ex. 2).

Houle wrote a disciplinary report concerning the incident. (Def. Ex. 3; Latimore Dep. at 55). Houle also later stated that no force was used against Latimore by any officer, and that he suffered no injuries. (Def. Ex. 22). There is no record that Latimore was ever disciplined in response to the report. (Latimore Dep. at 55-56).[4]

### 2. **Latimore Files a Grievance**

The same day the alleged assault and battery occurred, Latimore filed a grievance. (Def. Ex. 5). He requested that Poon be "reprimanded[,] suspended and removed from working in the SMU/RV building with segregated inmates." (*Id.*). The following day, Latimore filed another grievance making substantively identical claims. (Def. Ex. 6). It appears that he simultaneously filed a document titled "Statement of Events" recounting his version of the incident. (Def. Ex. 9). Thereafter, Latimore received a letter dated November 16, 2011, from prison Superintendent Gary Roden stating that the grievances had triggered an investigation. (Def. Ex. 7). Latimore later received a letter dated November 25, 2011, from Assistant Deputy Commissioner Karen

---

[4] Latimore speculates that the disciplinary report was dismissed because it was fabricated.

3

Hetherson of the DOC Internal Affairs Unit stating that an investigation was underway. (Def. Ex. 8).

### 3. Evidence of Injuries

Immediately after the alleged assault and battery, Latimore submitted a sick slip requesting medical services. (Def. Ex. 10). He wrote that he was suffering from "Severe pain in my fingers on both hands & wrists. My right forearm & elbow is hurting bad & bruised. I need help. I want to be seen my right hand goes numb on me on & off. Thank you." (*Id.*). On November 5, 2011, three days after the incident, he was examined by a nurse. The nurse found no swelling and concluded that he had good motion in his hands, wrists, and fingers. (*Id.*). The nurse prescribed Motrin. (*Id.*).

Latimore filed another sick slip on November 7, 2011. (Def. Ex. 11). He wrote "I need to see medical for my hand, wrist & arm pain. I have numbness in my right hand & my bones hurt. Since Nov. 2nd it has been hurting and in pain all day." (*Id.*). That same day, he was examined by a different nurse, who found no swelling. (*Id.*). The nurse also found "no apparent discomfort" when Latimore was asked to push down on an object. (*Id.*). He was again prescribed Motrin. (*Id.*). Various photographs of his hands, arms, wrists, and fingers were also taken on November 7, 2011. (Def. Ex. 12). The photographs show no visible injuries, swelling, or redness. (*Id.*).

On November 14, 2011, Latimore had a Health Services appointment and again stated that he was suffering pain as a result of the attack. (Def. Ex. 13). The nurse noted: "No edema; skin intact. No pain over bony prominences including wrist, metatarsals and fingers." (*Id.*). Although he initially refused to make a fist "due to pain," he did not complain when the nurse "palpated the bones." (*Id.*).

4

On November 15, 2011, the date of his transfer to MCI-Cedar Junction, Latimore was seen by a nurse. (Latimore Dep. at 75). He was brought into an employee break room, where several correctional officers, including Poon, were present. (*Id.*). The nurse examined his hand; according to Latimore, the examination lasted approximately five minutes. (*Id.* at 76).

At his deposition, Latimore testified that Poon's actions had caused him to suffer various cuts and "scrapes" that bled. (*Id.* at 57). He also contends that he had a torn tendon and could not bend his left thumb. (*Id.* at 43). He testified that his injuries prevented him from performing various sexual acts and vigorously exercising. (*Id.* at 58) ("I can't—it's messed up my sex life. I can't do sexual positions I used to [be] able to do for the amount of time I used to do them.") ("[I]f I get up on the pull-up bar, it puts so much strain on the left hand . . . that by the time I got to the third or fourth set, it's like I'm going to be out of commission for the next five days."). Latimore also stated that as a result of the attack, he became "emotionally messed [ ] up" and "paranoid of the police." (*Id.* at 68). He also claims to suffer from various mental-health issues, including depression, anxiety, and paranoia, and that he has lost his fiancée. (*Id.* at 69-70).[5]

### 4. Alleged Injuries Suffered Outside MCI-Norfolk

Latimore had a fracture in his right thumb at least seven months before the alleged assault. (Def. Ex. 15). Medical progress notes from April 6 and April 20, 2011, discuss the thumb injury. (Def. Ex. 16). A separate radiology report from April 21, 2011, indicates that the injury stemmed from a sports-related incident. (Def. Ex. 17). On April 27, 2011, Latimore filled out a sick slip requesting a medical appointment because his finger was broken. (Def. Ex. 18). However, he then declined to see a nurse. (*Id.*).

---

[5] Latimore also states that he has "serious victim syndrome," which he defines as "the syndrome of knowing you were assaulted and that an enormous amount of people conspired to cover up the assault." (Latimore Dep. at 69).

5

After the alleged incident at question, Latimore also filed suit against the City of Chelsea. *See Latimore v. City of Chelsea*, No. 17-cv-10817-WGY. In his complaint, Latimore alleged that during a traffic stop, a Chelsea police officer committed assault and battery, causing his left arm and elbow to be injured.

### 5. DOC's Investigation of Latimore's Grievances

As noted, the two grievances filed by Latimore triggered an investigation by DOC. The DOC Inner Perimeter Security ("IPS") Unit conducted an investigation into the grievances at the request of Superintendent Roden. (Def. Ex. 21). It appears that the investigation began on November 8, 2011. (*Id.*).

IPS interviewed Latimore and several corrections officers and other prison staff. (*Id.*). It concluded that "[t]he allegations brought forth by Latimore claiming he was assaulted by Poon are unfounded" and that Latimore "could not provide supporting evidence or reliable witnesses to support any of the allegations." (*Id.*). The IPS report, which was finalized in July 2012, exonerated Poon of any wrongdoing.

William Grossi was the Director of Security at MCI-Norfolk. (Def. SMF ¶ 50). He states that he does not recall Latimore ever telling him about Poon's actions. (Def. Ex. 20). As Director of Security, he had no role in these events except to review and sign off on DOC's investigation once it was complete. (*Id.*). In Latimore's deposition, the only mention he makes of Grossi is that Grossi should have provided medical care and initiated the IPS investigation immediately upon learning of the alleged assault and battery. (Latimore Dep. at 85-88, 93). However, Latimore does not dispute that he was seen by medical personnel at DCI-Norfolk and that IPS did conduct an investigation.

### B. Procedural Background

On August 22, 2014, Latimore filed suit in this court against the Department of Corrections and against defendants Houle, Poon, Pontes, and David Clancy in both their individual and official capacities.[6] The complaint originally alleged five causes of action: a claim under 42 U.S.C. § 1983 for excessive force in violation of the Eighth Amendment (Count One); a claim under Mass. Gen. Laws ch. 12 § 11I for excessive force in violation of Article 26 of the Massachusetts Declaration of Rights (Count Two); a claim for common-law battery (Count Three); a claim for intentional infliction of emotional distress (Count Four); and a claim under 42 U.S.C. § 1983 for failure to supervise (Count Five).

On June 29, 2015, the four individual defendants moved to dismiss various counts for failure to state a claim upon which relief can be granted. On November 13, 2015, the Court issued a memorandum and order dismissing all counts against the individual defendants in their official capacities; all counts against Pontes and Clancy; and Counts One through Four against Houle.

Thereafter, on November 30, 2015, Latimore moved to amend his complaint to add a claim for deliberate indifference to serious medical needs. Although the Court had already ruled on the motion to dismiss, in light of his *pro se* status, the Court granted the motion to amend on February 5, 2016.

On July 14, 2016, attorney Bronwyn Roberts entered an appearance *pro bono* on behalf of Latimore. On September 9, 2016, while represented by counsel, Latimore filed a motion for leave to file a second amended complaint. The proposed second amended complaint added three new defendants who were Department of Corrections staff (Grossi, Superintendent Roden, and

---

[6] Clancy is another corrections officer.

Assistant Deputy Commissioner of the Health Services Division Stephanie Collins) and one new defendant who was a nurse at UMass Correctional Health (Beth Chamberlain). It also added new claims relating to alleged inadequate health care, retaliation for the bringing of this action, and invasion of privacy.[7] Although the deadline for amending the pleadings had expired, the Court granted the motion in part on October 3, 2016, denying amendment only as to the emotional distress claim with respect to defendant Roden. (Docket No. 125).

Latimore then moved to fire his *pro bono* counsel, attorney Roberts, and proceed *pro se*, which the magistrate judge granted on December 28, 2016. On February 3, 2017, the Court issued an order dismissing all claims against defendants Chamberlain and Collins. At that point, the only defendants remaining were Houle, Poon, and Grossi.

On November 17, 2017, Latimore filed a motion for leave to file a third amended complaint. The Court denied the motion on December 7, 2017. Defendants have now moved for partial summary judgment. Specifically, defendants seek summary judgment as to defendants Houle and Grossi on all counts, and as to defendant Poon on Counts 3, 4, 6, and 7.

## II.     Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[7] The second amended complaint asserted seven counts against defendants: a § 1983 claim for excessive force, denial of medical treatment, and retaliation against Poon (Count 1); a § 1983 claim for denial of medical treatment and retaliation against Houle and Grossi (Count 2); a claim under the Massachusetts Declaration of Rights against Poon, Houle, and Grossi (Count 3); a claim under the state Civil Rights Act against Poon, Houle, and Grossi (Count 4); assault and battery against Poon (Count 5); intentional infliction of emotional distress against Poon and Houle (Count 5); and invasion of privacy against Poon (Count 7).

8

R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

## III. Analysis

### A. Count 2—Section 1983 Claims Against Houle and Grossi

#### 1. Deliberate Indifference to Medical Needs

Count 2 asserts claims against Houle and Grossi for violation of the Eighth Amendment, alleging that they acted with deliberate indifference with respect to plaintiff's medical needs. (2d Am. Compl. ¶ 49).

"[T]o succeed in an Eighth Amendment claim under § 1983 claim based on denied . . . medical care," a plaintiff must prove (1) an objectively serious medical need and (2) that defendant exhibited "deliberate indifference" to the prisoner's needs. *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 657 (D. Mass. 2016) (citing *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014)). "Deliberate indifference" requires that defendant be subjectively "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 156 (1st Cir. 2007) (quoting *Farmer v. Brennan*,

9

511 U.S. 825, 837 (1994)). Mere medical negligence will not support a § 1983 claim. "[R]ather, the treatment provided must have been so inadequate to constitute 'an unnecessary and wanton infliction of pain . . . .'" *Lopes*, 177 F. Supp. 3d at 658 (quoting *Leavitt v. Corr. Med. Servs, Inc.*, 645 F.3d 484, 497 (1st Cir. 2011)).

Even assuming plaintiff had a "serious medical need," there is no evidence that either Houle or Grossi exhibited any deliberate indifference to it. Notably, in his deposition, plaintiff never stated that Houle and Grossi prevented him from receiving medical care or deliberately delayed or interfered with the delivery of care.[8] Plaintiff merely testified that Houle told him he "was all right" after the assault and battery. (Latimore Dep. at 39). He then testified that Houle became "more caring towards [him] and more hospitable towards [him]." (*Id.* at 40).[9] Similarly, plaintiff testified that Grossi failed to provide medical care on November 4, 2011, two days after the attack. (*Id.* at 92). But Grossi is not a medical professional. And plaintiff admitted that Grossi had invited him to "write [ ] a letter" detailing his grievances and that he was seen by a nurse the following day. (*Id.* at 92-93).

Accordingly, with respect to the Eighth Amendment claim against Houle and Grossi for deliberate indifference to medical needs, the motion for summary judgment will be granted.

### 2. **Retaliation**

Count 2 also asserts claims under the First Amendment against Houle and Grossi for retaliation, alleging that they retaliated against Latimore for filing grievances and seeking medical attention. (2d Am. Compl. ¶¶ 52, 56).

The First Amendment guarantees not only freedom from government censorship, but also

---

[8] Plaintiff was able to submit a sick slip immediately after the incident. (Def. Ex. 10).

[9] For example, plaintiff stated that Houle began bringing him extra food. (Latimore Dep. at 40).

freedom from official retaliation on the basis of protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out."). "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Id.* (quoting *Crawford-El v. Britton*, 523 U.S. 547, 588 n.10 (1998)) (alternation in original). Thus, even conduct that "fall[s] short of a direct prohibition against the exercise of First Amendment rights" can be actionable if it has a "deterrent, or 'chilling,' effect." *Bd.. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).

While many rights and freedoms are necessarily curtailed during incarceration, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). Thus, despite the general deference owed to the managerial decisions of prison officials, "retaliation against a prisoner's exercise of constitutional rights is actionable." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). However, "to survive summary judgment on a retaliation claim, a prisoner must make out a prima facie case by adducing facts sufficient to show that he engaged in a protected activity, that the state took an adverse action against him, and that there is a causal link between the former and the latter." *Id.* at 48. Furthermore, as to causation, "a prisoner must prove that the [adverse] action would not have been taken 'but for' the alleged improper reason." *L'Heureux v. Whitman*, 1997 WL 639324, at *1 (1st Cir. 1997).

Plaintiff stated that the only instance of Houle retaliating against him was the "fabrication" of a disciplinary report summarizing the events of November 2, 2011. (Latimore Dep. at 81). He contends that Houle retaliated against him for filing grievances and "exercising

11

his right of free speech and right of access to the courts." (2d Am. Compl. ¶ 56). There is no allegation that Grossi took any retaliatory steps against plaintiff.

Although filing grievances is a protected activity, Houle wrote the disciplinary report on November 2, 2011, the same day plaintiff filed his first grievance. There is no evidence showing that Houle was even aware that plaintiff had filed a grievance. And even assuming that Houle was aware of the grievance, mere knowledge is insufficient to establish causation. Plaintiff must show that Houle wrote the disciplinary report *because of* the grievance. No evidence of a retaliatory motive has been submitted to the Court.[10]

Therefore, with respect to the First Amendment claim against Houle and Grossi for retaliation, the motion for summary judgment will be granted.[11]

B. **Qualified Immunity**

Defendants also seek summary judgment as to the § 1983 claims on the basis of qualified immunity.[12] The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

---

[10] If there was a legitimate reason for the report, plaintiff cannot establish that it amounted to a constitutional violation. *See Hartman*, 547 U.S. at 260 ("[A]ction colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

[11] There is no evidence that Poon retaliated against plaintiff for filing a grievance, as the alleged assault and battery occurred *before* the grievances were filed. The basis for the retaliation § 1983 claim in Count 1 is plaintiff's speculation that Poon felt plaintiff was "too lucky." (Latimore Dep. at 80) ("Over the time that me and Poon was in the unit together, we didn't have, per se, an issue. But he really felt as if—the way he came off to me was as if he felt as if I was too lucky. I was too lucky, man. Do you know what I'm saying? Do you ever feel like somebody feels like you're too lucky, like you deserve to be cut up or something? That's the type of things he was oozing everyday.").

[12] In addition, defendants contend that common-law immunity applies to defendant Poon as to the state-law tort claims because plaintiff has failed to make a *prima facie* showing of his tort claims. (Mem. in Supp. at 12). However, defendants are not seeking summary judgment as to Count 5 (assault and battery). Furthermore, as shown below, the claim for intentional infliction of emotional distress against defendant Poon survives summary judgment. Accordingly, the common-law immunity defense does not apply.

12

457 U.S. 800, 818 (1982). However, the Court has already granted summary judgment to Grossi and Houle on Count 2, and defendants are not seeking summary judgment on the § 1983 claims against Poon. Accordingly, the Court need not consider the qualified-immunity issue.[13]

### C. Count 3—Massachusetts Declaration of Rights

Count 3 alleges that all three defendants violated plaintiff's rights under the Massachusetts Declaration of Rights. Specifically, plaintiff contends that defendants violated Articles 11 (access to the courts), 16 (freedom of speech), and 26 (freedom from cruel or unusual punishments). However, there is no evidence that any of the defendants restricted plaintiff's access to the courts or his speech. Accordingly, with respect to the claims under Articles 11 and 16, the motion for summary judgment will be granted.

That leaves plaintiff's claim under Article 26. "Because Article 26 and the Eighth Amendment guarantee essentially the same scope of rights, there is no need for separate analyses." *Carter v. Symmes*, 2008 WL 341640, at *5 n.3 (D. Mass. Feb. 4, 2008) (citing *Duran v. Duval*, 1998 WL 765726, at *4 (D. Mass. Oct. 28, 1998)); *see also Luckern v. Suffolk Cty. Sheriff's Dep't*, 2010 WL 1172648, at *5 (D. Mass. Mar. 22, 2010). As noted, the Court finds that defendants Houle and Grossi did not violate plaintiff's Eighth Amendment rights. Therefore, on Count 3, summary judgment with respect to those two defendants will be granted.

With respect to defendant Poon, defendants contend that plaintiff is precluded from claiming damages directly under the Declaration of Rights. It is unclear whether a private right of action exists under Article 26. *See Podgurski v. Dep't of Corr.*, 2014 WL 4772218, at *7 (D. Mass. Sep. 23, 2014). "Massachusetts has not definitively determined whether a cause of action

---

[13] In their memorandum of law, defendants mistakenly assert that they are seeking the qualified immunity defense as to all three defendants.

13

can be brought based solely on the Declaration of Rights," and the Massachusetts Appeals Court has stated that it will "look to the Federal standards in reviewing [a plaintiff's] claim." *Cormier v. City of Lynn*, 2017 WL 121065, at *3 (Mass. App. Ct. Jan. 12, 2017) (citing *Layne v. Superintendent, Mass. Corr. Inst., Cedar Junction*, 406 Mass. 156, 159-60 (1989)). However, federal courts in recent years have permitted claims under Article 26 to proceed. *See, e.g.*, *Podgurski*, 2014 WL 4772218, at *7 ("[T]he Court agrees . . . that as a general proposition, a cause of action can, in certain circumstances, be brought directly under the Massachusetts Declaration of Rights in the absence of a statutory vehicle for obtaining relief.") (Casper, J.); *Nascarella v. Cousins*, 2015 WL 1431054, at *5 (D. Mass. Mar. 27, 2015) (Talwani, J.); *Cryer v. Spencer*, 2012 WL 892883, at *7 (D. Mass. Mar. 15, 2012) (Tauro, J.). Under the circumstances, and although there is certainly some doubt as to the issue, the Court concludes that the complaint states a claim for violation of Article 26.

Defendants are not seeking summary judgment on Count 1, which alleges an Eighth Amendment claim against Poon. It appears that the only basis on which Poon seeks summary judgment as to the Article 26 claim is the contention that there is no private right of action for such a claim. Because "Article 26's prohibition on cruel and unusual punishment is 'at least as broad as the Eighth Amendment,'" the Article 26 claim will survive summary judgment. *Nascarella*, 2015 WL 1431054, at *5 (quoting *Good v. Comm'r of Corr.*, 415 Mass. 329, 335 (1994)).

Accordingly, as to Count 3, the motion for summary judgment will be denied as to the Article 26 claim against defendant Poon and otherwise granted.

### D.     Count 4—Massachusetts Civil Rights Act

Count 4 alleges that all defendants violated the Massachusetts Civil Rights Act.

Specifically, the complaint states that defendants violated plaintiff's "right to be free from cruel and unusual punishment, to be free from the use of excessive and unjustified force, his right to adequate medical care, and to exercise his right of free speech and right of access to the courts." (2d Am. Compl. ¶ 63). However, as noted, plaintiff has failed to show that defendants denied him medical care, or otherwise interfered with his freedom of speech or access to the courts. The only potentially viable basis for a claim under the MCRA is the alleged assault and battery on plaintiff by Poon.

The MCRA provides a right of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation or coercion." Mass. Gen. Laws ch. 12, § 11I. A threat "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm"; intimidation "involves putting in fear for the purposes of compelling or deterring conduct"; and coercion means "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994). "[T]he MCRA contemplates a two-part sequence: [liability may be found where] (1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that he has the constitutional right to do." *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009).

Plaintiff here contends that he was the victim of assault and battery, which of course can constitute a form of coercion. The problem, however, is that plaintiff was not battered in order to cause him to give up some other right (for example, the right to file a grievance or access the courts); the assault and battery itself was the alleged constitutional violation.

The Supreme Judicial Court has held that "[a] direct violation of a person's rights does

not by itself involve threats, intimidation, or coercion and thus does not implicate the [Massachusetts Civil Rights] Act." *Longval v. Comm'r of Corr.*, 404 Mass. 325, 333 (1989). In other words, the element of "threats, intimidation, or coercion" must be separately present in addition to the violation of rights. *See Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86, 93 (1999) (stating that *Longval* "affirmed the requirement under the MCRA that proof of 'threats, intimidation, or coercion' be in addition to the interference with the exercise or enjoyment of secured rights").

The record does not contain any evidence from which a reasonable jury could infer that Poon interfered with plaintiff's constitutional rights by means of "threats, intimidation, or coercion." Accordingly, as to Count 4, the motion for summary judgment will be granted.

### E. Count 6—Intentional Infliction of Emotional Distress

Count 6 alleges intentional infliction of emotional distress ("IIED") by Poon and Houle. To state a claim for IIED under Massachusetts law, a complaint must allege:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency[,] and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable [person] could be expected to endure it.

*Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976) (citations and internal quotation marks omitted); *accord Brown v. Hearst Corp.*, 54 F.3d 21, 27 (1st Cir. 1995).

Defendants contend that plaintiff has failed to offer any evidence in support of the first and third elements of the IIED claim. That is true as to defendant Houle. But assuming, as the Court must, that plaintiff's allegations are true, his claim is essentially that Poon used an excessive amount of force to inflict physical pain. In his deposition, plaintiff testified that the

16

assault and battery caused him to be "emotionally messed [ ] up" and suffer "emotional stress." (Latimore Dep. at 68-69). In addition, he alluded to "mental issues" and claimed to have developed "depression, anxiety, [and] paranoia." (*Id.* at 69-70). A reasonable jury could conclude that Poon should have known his conduct would cause emotional distress to his victim. *See Poy v. Boutselis*, 352 F.3d 479, 485 (1st Cir. 2003) (jury could properly find for plaintiff where defendant officer used excessive physical force despite absence of resistance or threats). Under the circumstances, there is sufficient evidence for the claim against Poon to survive summary judgment.

Accordingly, as to Count 6, the motion for summary judgment will be denied as to defendant Poon and otherwise granted.

## F. Count 7—Invasion of Privacy

Count 7 alleges invasion of privacy in violation of Mass. Gen. Laws ch. 214, § 1B by Poon.[14] Mass. Gen. Laws ch. 214, § 1B provides a right of action for invasion of privacy. However, "[i]n order for a plaintiff to succeed on an invasion of privacy claim, he must prove not only that the defendant unreasonably, substantially and seriously interfered with his privacy by disclosing facts of highly personal or intimate nature, but also that it had no legitimate reason for doing so." *Martinez v. New England Med. Ctr. Hosps., Inc.*, 307 F. Supp. 2d 257, 267 (D. Mass. 2004). "The statute obviously was not intended to prohibit serious or substantial interferences which are reasonable or justified." *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 518 (1991).

---

[14] Count 7 also asserts a claim for common-law invasion of privacy. Massachusetts does not recognize such a common-law cause of action. *See Spencer v. Roche*, 659 F.3d 142, 150 n.6 (1st Cir. 2011) ("To the extent that the appellant couches his invasion of privacy claim in the common law, Massachusetts has never recognized such a tort and it is not our place to create new causes of action under state law.").

The complaint alleges that Poon violated plaintiff's rights by observing his physical examination by a nurse on November 15, 2011. (2d Am. Compl. ¶ 75). However, there is no evidence that Poon's observation of the examination was unreasonable under the circumstances. In plaintiff's own words, the medical examination consisted of the nurse squeezing his hand. (Latimore Dep. at 75). Poon and various other unidentified correctional officers were present to "understand the extent of [plaintiff's] injuries." (*Id.*). The examination lasted no more than five minutes before plaintiff was discharged for his transfer to MCI-Cedar Junction. (*Id.* at 77). This falls well short of the type of intensely personal intrusion that courts have required for an invasion of privacy to constitute a cause of action. *See, e.g.*, *Hernandez v. Montanez*, 36 F. Supp. 3d 202, 213 (D. Mass. 2014) (holding that strip-search of a prison visitor without reasonable suspicion could violate Mass. Gen. Laws ch. 214, § 1B). Therefore, as to Count 7, the motion for summary judgment will be granted.

## IV. Conclusion

For the foregoing reasons, the motion for partial summary judgment is GRANTED in part and DENIED in part. Specifically, summary judgment will be granted to defendants Houle and Grossi on all counts; granted as to defendant Poon on Count 3 with respect to the Article 11 and 16 claims; granted as to Count 4 and Count 7; and otherwise denied.

**So Ordered.**

<br>

Dated: April 26, 2018

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge